IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMBERLY J. HOWELL for Yellowstone Coffee Express, LLC, | CV 23-23-BLG-KLD |
| Plaintiff, | |
| vs. | ORDER |
| UNITED STATES ATTORNEY GENERAL MERRICK B. GARLAND, DEPARTMENT OF HOMELAND SECURITY SECRETARY ALEJANDRO MAYORKAS, CITIZENSHIP AND IMMIGRATION SERVICES ACTING DIRECTOR UR M. JADDOU, CITIZENSHIP AND IMMIGRATION SERVICES CHIEF SUSAN DIBBINS, all in their Official Capacities, | |
| Defendants. | |

Plaintiff Kimberly J. Howell, for Yellowstone Coffee Express, LLC, brings

this action against the above-named Defendants seeking judicial review of a

decision by the United States Citizenship and Immigration Service (USCIS)

denying an employment-based Form I-140 visa petition ("I-140 petition") for

immigrant worker Erkin Rahimov, and asserting a First Amendment retaliation

claim arising out of the revocation of an I-140 petition for Erkin's Brother, Bahram

1

Rahimov. The parties have filed cross-motions for summary judgment (Docs. 39-1 and 46) and Plaintiff has filed a motion to amend the case management plan to allow for limited discovery in support of its constitutional claim. (Doc. 41). For the reasons stated below, Plaintiff's motions to amend the case management and for summary judgment are denied, and Defendant's cross-motion for summary judgment is granted.

I.    **Background**

A.    **Statutory and Regulatory Framework**

The Immigration and Nationality Act governs the allocation of employment-based immigrant visas, including the number of visas issued annually and the process by which the visas are awarded. 8 U.S.C. §§ 1151, 1153. The Act allocates employment-based visas based on five categories of immigrants: (1) priority workers; (2) applicants who are members of the professions holding advanced degrees or who are of exceptional ability; (3) skilled workers, professionals, and other workers; (4) certain special immigrants; and (5) those entering the United Stats for the purpose of engage in a new commercial enterprise. 8 U.S.C. § 1153(b). For purposes of the third category, "other workers" are "qualified immigrants who are capable, at the time of petitioning for classification…, of performing unskilled labor, not of a temporary or seasonal nature, for which qualified workers are not available in the United States." 8 U.S.C. §

1153(b)(3)(A)(iii).

The Act sets out a three-step process for obtaining permanent residency through an employment-based immigrant visa. *See e.g. Patel v. U.S. Citizenship and Immigration Services*, 2016 WL 795925, at *1 (E.D. Mich. March 1, 2016) (outlining the three-step process). First, the employer must apply for and obtain labor certification from the United States Department of Labor ("DOL"). 8 U.S.C. § 1182(a)(5). The DOL must certify that: (1) "there are not sufficient workers who are able, willing, qualified … and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor" and; (2) "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i).

Second, once the certification has been obtained, the employer must file an I-140 petition with USCIS on behalf of the non-citizen employee. 8 U.S.C. § 1154(a)(1)(F). The date on which the DOL accepts an application for certification is the "priority date" of an I-140 petition. 8 C.F.R. § 204.5(d). When an I-140 petition relates to an offer of employment, the petition "must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage." 8 C.F.R. § 204.5(g)(2). The employer "must demonstrate this ability at the time the priority date is established and continuing until the

3

beneficiary obtains lawful permanent residence." 8 C.F.R. § 204.5(g)(2).

"Evidence of this ability shall be either in the form of copies of annual reports,

federal tax returns, or audited financial statements." 8 C.F.R. § 204.5(g)(2). "In

appropriate cases, additional evidence such as profit/loss statements, bank records,

or personnel records, may be submitted by the petitioner or requested by" USCIS.

8 C.F.R. § 204.5(g)(2). USCIS has established three ways for an employer to

establish ability to pay: (1) by showing that it has a net income equal to or greater

than the proffered wage; (2) by showing its net current assets are equal to or

greater than the proffered wage; or (3) by showing that it is employing the

beneficiary and has also paid or currently is paying the proffered wage. USCIS

Memorandum, *Determination of Ability to Pay under 8 C.F.R. § 204.5(g)(2)* (May

4, 2004) ("the Yates memorandum").

At the third and final step in the process, while the I-140 petition is pending

or after it has been approved, the non-citizen employee must file a form I-485 to

apply to adjust his or her status to that of a permanent resident. 8 U.S.C. § 1255; 8

C.F.R. § 245.2(a)(3)(ii).

USCIS may revoke a previously approved I-140 petition "at any time" for

what the Secretary of Homeland Security "deems to be good and sufficient cause."

8 U.S.C. § 1155. "Good and sufficient cause" to revoke an I-140 petition exists

when "the evidence of record at the time the decision was issued warranted a

denial of the petition." *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 n.3 (9th Cir. 2008) (citing *Matter of Estime*, 19 I. & N. Dec. 450, 452 (BIA 1987)) (cleaned up).

### B.    Factual and Procedural Background

Plaintiff is a bakery and coffee business that was established on December 17, 2017, and is located in West Yellowstone, Montana. (Doc. 33 at ¶ 12). On May 6, 2020, Plaintiff filed I-140 visa petitions with USCIS on behalf of two immigrant workers it intended to employ in customer service positions, brothers Bahram and Erkin Rahimov. (Doc. 49, at ¶1; Doc. 37 at 141-49; Doc. 49 at ¶ 5; Doc. 36 at 133-41).

The petition Plaintiff filed on behalf of Bahram had a priority date of May 22, 2020. (Doc. 48 at ¶ 25). USCIS ultimately approved the petition for Bahram on December 29, 2021. (Doc. 48 at ¶ 26, citing Doc. 36 at 133).

The petition Plaintiff filed on behalf of Erkin had a priority date of May 19, 2020. (Doc. 48 at ¶ 4). The petition identified Erkin's prospective job as "Deli Counter Customer Service" and listed intended wages of $23,504 annually. (Doc. 48 at ¶ 2, citing Doc. 37 at 144). Plaintiff stated on the petition that it had a net annual income of $22,908 and attached Schedule C of its 2020 federal tax return to substantiate that amount. (Doc. 48 at ¶ 3, citing Doc. 37 at 139-40, 143).

On December 6, 2021, USCIS issued a Request for Evidence ("RFE") on the

petition, noting that the offered wage of $23,504 was greater than Plaintiff's net profit in 2020. (Doc. 48 at ¶ 5; Doc. 37 at 108-10). The RFE stated that Plaintiff could still submit evidence to satisfy the ability to pay requirement, and consistent with 8 C.F.R. § 204.5(g)(2) it listed the following "required initial evidence": (1) "[a] complete copy of your 2020 or 2021 annual reports"; (2) "[a] complete copy of your 2020 or 2021 audited financial statements"; or (3) "[a] complete copy of your 2021 federal income tax returns, with all accompanying schedules." (Doc. 48 at ¶ 6; Doc. 37 at 109). The RFE also stated that Plaintiff could submit additional evidence and provided examples of such evidence, but advised Plaintiff that it "may not submit additional evidence in place of initial evidence unless you demonstrate that initial evidence does not exist or that you cannot obtain it." (Doc. 48 at ¶ 7; Doc. 37 at 109-10).

On December 21, 2021, Plaintiff responded to the RFE by submitting what it described as a complete copy of its 2020 federal tax return showing a net loss of $162,209. (Doc. 48 at ¶ 8; Doc. 37 at 63, 69-104). To explain this loss, Plaintiff also submitted: (1) a letter from its accountant stating that the business "has a history of paying wages" and the business's net income as of September 30, 2021 was $24,652.60; and (2) a letter from a loan officer at First Interstate Bank stating that the business was current on all loans and was "in a position to meet its payroll and debt obligations as reported by the ownership and management group." (Doc.

37 at 63, 105-06). On January 4, 2022, USCIS issued a decision denying Plaintiff's I-140 petition on the ground that the evidence submitted did not establish the ability to pay Erkin the proffered wage. (Doc. 48 at ¶ 10; Doc. 37 at 59-61).

In February 2022, Plaintiff filed a motion to reopen or reconsider the denial of its I-140 petition on behalf of Erkin, and included additional evidence with its motion. (Doc. 48 at ¶ 13; Doc. 37 at 21-54). Several months passed without any further agency action, and on March 10, 2023, Plaintiff filed this action seeking mandamus relief to compel the USCIS to take action on Plaintiff's motion to reopen or reconsider the denied petition for Erkin. (Doc. 1). On April 27, 2023, USCIS issued a decision finding the evidence did not establish that Plaintiff had the continuing ability to pay the proffered wage from the priority date until lawful permanent residence, and dismissing Plaintiff's motion. (Doc. 37 at 9-14).

On July 7, 2023, Plaintiff filed a First Amended Complaint for declaratory and injunctive relief, claiming that USCIS's decision denying the I-140 petition for Erkin was arbitrary and capricious agency action and an abuse of discretion in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). (Doc. 16). Plaintiff asserted that Erkin and Bahram were similarly situated workers, that it had received the same RFE notices for both workers, and that it "submitted exactly the same response for each case to demonstrate its ability to pay the proffered wages." (Doc. 16 at ¶ 13). Plaintiff alleged that USCIS acted

arbitrarily and capriciously by denying the I-140 petition for Erkin but approving the petition for Bahram. (Doc. 16 at ¶ 13).

A few months later, on September 20, 2023, USCIS sent Plaintiff a Notice of Intent to Revoke ("NOIR") the petition it had previously approved for Bahram. (Doc. 48 at ¶ 31; Doc. 36 at 125-28). USCIS advised Plaintiff that upon review, it had "determined that the approval was in error" and the evidence did not establish that Plaintiff had "the ability to pay the proffered wage from the priority date and continuing until [Bahram] obtains permanent residence." (Doc. 36 at 125, 127).

Plaintiff responded to the NOIR on October 19, 2023, and provided additional evidence bearing on its ability to pay, including: (1) individual financial statements for 2019 and 2021; (2) a notarized statement from Plaintiff's owner; (3) Plaintiff's owner's individual 2019 federal tax return; (4) a certificate of fact from the Montana Secretary of State; (5) Plaintiff's corporate federal tax returns from 2021 and 2022; (6) a profit and loss statement covering the period from January 1, 2023 to October 4, 2023; and (7) a statement from Plaintiff's accountant. (Doc. 48 at ¶ 33, citing Doc. 36 at 19-124). In December 2023, Plaintiff filed a Third Amended Complaint to add a First Amendment retaliation claim against USCIS.[1] (Doc. 26). Plaintiff asserted that it had engaged in constitutionally protected

---

[1] Plaintiff filed Second Amended Complaint in August 2023, the specifics of which are not material to the pending motions. (Docs. 19).

conduct when it filed suit challenging USCIS's denial of the petition filed on behalf of Erkin, and that USCIS retaliated against it for doing so by initiating an effort to revoke the petition filed on behalf Bahram. (Doc. 26 at ¶¶ 52-56).

USCIS issued a decision revoking the I-140 petition for Bahram on January 4, 2024. (Doc. 48 at ¶ 34, citing Doc. 36 at 3-10). Several weeks later, on February 26, 2024, Plaintiff filed a Fourth Amended Complaint for declaratory and injunctive relief to reflect that USCIS had revoked the petition filed on behalf of Bahram. (Doc. 33). The Fourth Amended Complaint is the current operative pleading and includes two claims for relief: (1) a claim alleging that USCIS's denial of the I-140 petition for Erkin was arbitrary and capricious and contrary to law in violation of Section 706(2)(A) of the APA; and (2) a claim alleging that USCIS retaliated against Plaintiff for challenging the denial of the I-140 petition for Erkin by revoking the I-140 petition for Bahram, in violation of Plaintiff's First Amendment rights. (Doc. 33 at ¶¶ 48-59). Plaintiff requests declaratory relief stating that USCIS's decisions denying Erkin's petition and revoking Bahram's petition were arbitrary, capricious, and contrary to law. (Doc. 33 at ¶ 60(b)(c)) Plaintiff requests injunctive relief in the form of an order remanding both petitions to USCIS with directions to withdraw its denial of the petition for Erkin, and reinstate its approval of the petition for Bahram. (Doc. 33 at ¶ 60(d)(e).

In February 2024, the Court adopted a joint case management plan

submitted by the parties and established a summary judgment briefing schedule. (Doc. 32). In compliance with the Court's case management order, the parties have filed cross-motions for summary judgment which are fully briefed and ripe for ruling. (Docs. 39-1 and 46). In addition, Plaintiff has filed an opposed motion to amend the case management plan to permit it to conduct limited discovery in support of its First Amendment retaliation claim. (Doc. 41).

## III.    Legal Standards

### A.    Summary Judgment

Under Rule 56(c), a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*

*Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249–50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

### B.    Administrative Procedure Act

The APA permits judicial review of agency decisions and provides that a court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is a narrow one, and the reviewing court cannot substitute its judgment for that of the agency. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009). "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Backcountry Against Dumps v. Federal Aviation Administration*, 77 F.4th 1260, 1267 (9th Cir. 2023) (citation omitted). An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Altera Corp. &*

*Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

A court's review is generally limited to the administrative record. *Goffney v. Becerra*, 995 F.3d 737, 747-48 (9th Cir. 2021). Because a court's review is limited to the administrative record, discovery is not generally permitted. *United States v. Kerr*, 2025 WL 732015, at *3 (D. Ariz. March 7, 2025) (citing *McCrary v. Gutierrez*, 495 F.Supp.2d 1038, 1041 (N.D. Cal. 2007)). However, the Ninth Circuit has identified four narrow exceptions that "may justify permitting discovery or expanding judicial review beyond the administrative record." *Kerr*, 2025 WL 732015, at *3 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), amended 867 F.2d 1244 (9th Cir. 1989). Courts may allow discovery or review extra-record evidence only when "(1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith." Kerr, 2025 WL 732015, at *3 (quoting *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009)).

The court reviews the agency's factual findings for substantial evidence, and "will not disturb the agency's findings under this deferential standard unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Herrera v. U.S. Citizenship & Immigration Services*, 571 F.3d 881, 885 (9th Cir. 2009) (citation and internal quotation marks omitted). *See also*, *Northwest Ecosystems Alliance v. U.S. Fish and Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.").

In an action brought under the APA, summary judgment serves as an avenue for deciding whether a final agency determination is adequately supported by the administrative record. *Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).

## III.    Discussion

### A.    Erkin Rahimov

Plaintiff argues USCIS's decision denying the I-140 petition for Erkin was arbitrary, capricious, and contrary to law because it failed to properly assess the evidence of record regarding Plaintiff's ability to pay. USCIS counters that its decision was supported by substantial evidence and in accordance with the APA. The Court agrees with USCIS.

USCIS denied Plaintiff's petition on January 4, 2022. (Doc. 37 at 59-61). The agency found the evidence did not establish that Plaintiff had the continuing ability to pay the proffered wage beginning on the May 19, 2020, priority date. (Doc. 37 at 60). The decision noted that although Plaintiff offered Erkin a wage of $23,504, Schedule C of Plaintiff's 2020 federal tax return indicated it had a net profit of only $22,908 that year. (Doc. 37 at 59). USCIS also considered the evidence submitted by Plaintiff in response to the RFE, including the "completed copy" of Plaintiff's 2020 Schedule C federal tax return showing a net loss of $162,209, and the letters from Plaintiff's accountant and the loan officer at First Interstate Bank. (Doc. 37 at 60). Although the accountant and loan officer asserted Plaintiff was "in a financial position to pay wages," USCIS noted that there was no documentary "evidence to support these assertions." (Doc. 37 at 60). Citing *Matter of Treasure Craft of California*, 14 I. & N. Dec. 190, 194 (BIA 1972), USCIS found that "[s]imply going on record without supporting substantive evidence" was not sufficient to satisfy Plaintiff's burden of proof in the proceedings. (Doc. 37 at 60).

Based on the evidence before it, including Plaintiff's 2020 federal tax return documents, USCIS found that Plaintiff had not shown it had a net income equal to or greater than the proffered wage. USCIS further found there was no evidence indicating that Plaintiff had net current assets equal to or greater than the proffered

wage, or that Plaintiff had already been paying Erkin at a rate equal to or greater than the proffered wage. (Doc. 37 at 6). Because Plaintiff had not provided evidence establishing that it had the continuing ability to pay the proffered wage beginning on the May 19, 2020, priority date, USCIS denied the petition.

Plaintiff then filed a motion to reopen or reconsider USCIS's decision, and provided the following additional evidence with its motion: (1) a 2021 unaudited profit and loss statement; (2) a 2021 unaudited balance sheet; (3) a second letter from Plaintiff's accountant; (4) copies of Erkin's Form W-2 Wage and Tax Statements from 2016-2017; (5) a 2021 individual financial statement from Plaintiff's owner; and (6) Schedule C from Plaintiff's 2019 federal tax return showing a net loss of $55,836. (Doc. 48 at ¶ 14; Doc. 37 at 32-54).

USCIS dismissed Plaintiff's motion on April 27, 2023. (Doc. 37 at 9-14). Based on the information provided in the individual financial statement of Plaintiff's owner, USCIS found that Plaintiff had sufficient net current assets to pay the proffered wage during 2021. (Doc. 37 at 11, 49-50). Although USCIS determined that Plaintiff had established its ability to pay in 2021, it concluded Plaintiff had not demonstrated its ability to pay from the priority date of May 19, 2020, through the end of 2020. (Doc. 37 at 11, 13). USCIS reaffirmed its prior determination that because Schedule C from Plaintiff's 2020 federal tax return showed a loss of $162,209 and a net profit of only $22,908, Plaintiff had not

proven that it had a net income equal to or greater than the proffered wage of
$23,504 from the priority date of May 19, 2020, through the end of year 2020.
(Doc. 37 at 13, 45-46).

USCIS further found that because Plaintiff had not submitted any evidence
regarding its net current assets for the year 2020, Plaintiff failed to establish that it
had net current assets—defined as current assets minus current liabilities—equal to
or greater than the proffered wage from the priority date May 19, 2020, through the
end of the year. (Doc. 37 at 13).

Finally, on the question of whether Plaintiff had already been remunerating
Erkin at a rate equal to or greater than the proffered wage, USCIS addressed the
W-2 forms from 2016 and 2017 submitted by Plaintiff in support of its motion.
(Doc. 37 at 13, 47-48). As USCIS observed, the year 2021 was printed on the W-2
forms but that year had been crossed out and the years 2016 and 2017 were
handwritten on the forms. (Doc. 37 at 13, 47-48). The agency found these
handwritten changes created "an inconsistency in the record which casts doubt on
their reliability as evidence." (Doc. 37 at 13). Because Plaintiff had not presented
evidence to resolve the inconsistency, the agency found the W-2s were not
probative of Erkin's wages. (Doc. 37 at 13, citing *Matter of Ho*, 19 I. & N. 582,
591-92 (BIA 1988) (a petitioner must resolve inconsistencies in the record "by
independent objective evidence," and "[a]ttempts to explain or reconcile the

16

conflicting accounts, absent competence objective evidence pointing to where the truth, in fact, lies, will not suffice."). USCIS additionally noted that the W-2 forms did not identify Plaintiff as the employer, and instead listed a different employer with a different employer identification number. (Doc. 37 at 14, 47-48). For these reasons, USICS found that Plaintiff failed to establish that it had already been remunerating Erkin at a rate equal to or greater than the proffered wage. (Doc. 37 at 14).

Plaintiff argues its financial situation in 2020 was adversely affected by the far-reaching impacts of the COVID-19 pandemic, and USCIS should have considered its overall financial circumstances when assessing ability to pay. Plaintiff relies on *In re matter of Sonegawa*, 121 I. & N. 612 (BIA 1967) to supports its position that USCIS was required to "conduct a holistic evaluation of Plaintiff's business operations, extending beyond mere financial metrics isolated to the year 2020." (Doc. 39-1 at 15).

In *Sonegawa*, the Board of Immigration Appeals held that even if an employer cannot establish ability to pay at all times since the priority date of a petition, the "employer can still gain approval by establishing a reasonable expectation of future profits sufficient to pay the proffered wage based on a totality of the circumstances." *Estrada-Hernandez v. Holder*, 108 F.Supp.3d 936, 945 (S.D. Cal. 2015) (citing *Sonegawa*, 121 I. & N. 612). The employer in *Sonegawa*

had run a financially successful business for more than ten years and produced evidence that its small profit during the relevant year was due to unique conditions that were not likely to be repeated. *Estrada-Hernandez*, 108 F.Supp.3d at 945-46 (citing *Sonegawa*, 121 I. & N. at 614). Based on a fact-specific analysis of the employer's financial condition, the Board found that the employer's "expectations of continued increase in business and increasing profits are reasonable expectations and that it has been established that she has the ability to pay the beneficiary the stipulated wages." *Sonegawa*, 121 I. & N. at 615.

USCIS rejected Plaintiff's argument that *Sonegawa* provides the controlling standard, noting that the exception it created applies only "if the employer's inability to pay the proffered wage was an anomaly amongst profitable years." (Doc. 37 at 19). USCIS found the facts of record here vastly different than those in *Sonegawa,* noting that Plaintiff's tax returns did not "establish an overall pattern of business that is generally profitable or successful." (Doc. 37 at 19). The agency cited Plaintiff's 2019 tax return, which showed a net loss of $55,836, as well as Plaintiff 2020 tax return, which showed a net loss of $162,209. (Doc. 37 at 19, 45, 53). USCIS also addressed the accountant's letter stating that Plaintiff had "never missed paying [its] employees or paying [its] bills," but reiterated that without supporting evidence, this statement was not sufficient to establish ability to pay. (Doc. 37 at 19).

USCIS's reasoning is supported by substantial evidence and is consistent with the law. *Sonegawa* established what courts have described as a "totality of the circumstances" exception to the three traditional methods for proving ability to pay. *See e.g. Estrada-Hernanez*, 108 F.Supp.3d at 945. But the *Sonegawa* exception applies "only if the failure of [the employer] to pay the proffered wage was an anomaly among profitable years." *Taiyang Foods Inc. v U.S. Citizenship and Immig. Services*, 444 Fed. Appx 115 (9th Cir. 2011) (unpublished). *See also, Just Bagels Mff., Inc. v. Mayorkas*, 900 F.Supp.2d 363, 375-76 (holding *Sonegawa*'s totality of the circumstances exception did not apply where the employer failed to provide any particularized evidence that would have allowed the agency to consider whether the employer's earnings during the relevant years "were anomalous in comparison to previous years"). Plaintiff began operating in December 2017, but did not provide any financial information for 2017 or 2018. Plaintiff's tax returns for 2019 and 2020—its second and third full years in operation—showed net losses of $55,836 and $162,209 respectively. (Doc. 48 at ¶ 21; Doc. 37 at 45, 53). USCIS recognized that the COVID-19 pandemic may have contributed to Plaintiff's unprofitable year in 2020, but reasonably found the record did not establish that 2020 was an anomaly among profitable years.

To the extent Plaintiff asserts USCIS erred by not giving more weight to the November 2021 letters from its accountant and the loan officer at its lending bank,

the Court is not persuaded. Plaintiff's accountant explained that despite the loss

shown on Plaintiff's 2020 federal tax return, Plaintiff had been able to meet its

banking obligations and pay employee wages. (Doc. 37 at 105). The loan officer at

Plaintiff's bank similarly stated that Plaintiff was currently paying all loans as

agreed. (Doc. 37 at 106). But these general assertions were not supported with any

evidence documenting Plaintiff's loan and wage payments. An agency does not act

arbitrarily and capriciously by refusing to credit letters that are not supported by

documentary evidence. *See Matter of Treasure Craft of California*, 14 I. & N. Dec.

190 (BIA 1972).

 In sum, the Court concludes for the reasons stated above that USCIS's

decision denying the I-140 petition for Erkin based on Plaintiff's failure to

establish the continuing ability to pay the proffered wage from the May 19, 2020,

priority date through the date of permanent residency is supported by substantial

evidence and was not arbitrary, capricious, or contrary to law.

### B.     Bahram Rahimov

 To the extent Plaintiff's Fourth Amended Complaint can be read as

challenging revocation of the I-140 petition filed on behalf of Bahram on the

ground that the USCIS's decision was arbitrary and capricious in violation of the

APA, Plaintiff's claim is foreclosed by the United States Supreme Court's recent

decision in *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024). On December 12, 2024, the

United States filed a notice of supplemental authority highlighting *Bourfa*, which considered whether revocation of a visa petition under 8 U.S.C. § 1155 "qualifies as a decision 'in the discretion of' the Secretary [of Homeland Security] such that it falls within the purview of a separate statute—§ 1252(a)(2)(B)(ii)—that strips federal courts of jurisdiction to review certain discretionary actions." *Bouarfa*, 604 U.S. at 9. The Supreme Court held that it does, meaning that the Secretary of Homeland Security's decision to revoke the initial approval of a visa petition based on "good and sufficient cause" is a discretionary decision that courts lack jurisdiction to review. *Bouarfa*, 604 U.S. at 7-11. Because USCIS revoked its approval of the visa petition filed on behalf of Bahram pursuant to 8 U.S.C. § 1155 for what the agency deemed to be good and sufficient cause, this Court lacks jurisdiction to review that decision. (Doc. 36 at 3-10).

Plaintiff's Fourth Amended Complaint also includes a First Amendment retaliation claim arising out of the revocation of the petition filed on behalf of Bahram. (Doc. 33 at ¶¶ 55-59; Doc. 57-1 at ¶6). Plaintiff alleges it engaged in constitutionally protected conduct by filing suit to challenge the denial of its I-140 petition for Erkin, and that USCIS retaliated against it for doing so by revoking the approved petition it filed for Bahram. (Doc. 33 at ¶¶ 55-59). Specifically, Plaintiff claims the government revoked Bahram's petition "with the intent to chill Plaintiff's exercise of its First Amendment Rights," and further alleges that "but

21

for the filing of the amended complaint and raising the discrepancy between, and arbitrariness of, the agency's two decisions, Defendants would not have revoked the favorable decision with respect to Plaintiff's petition on behalf of Bahram Rahimov." (Doc. 33 at ¶¶ 57-58). Plaintiff argues this constitutional claim falls outside the scope of *Bouarfa*, which recognized in a footnote that the plaintiff had not "alleged that the agency violated constitutional or procedural requirements when it revoked her petition," and "express[ed] no view as to whether a lawsuit with such allegations would be reviewable." *Bouarfa*, 604 U.S. at 19 n. 5.

Plaintiff has filed a motion to amend the case management order to permit it to conduct limited discovery in support of its First Amendment retaliation claim. (Doc. 41). Plaintiff argues there is good cause to amend the case management order because it mistakenly agreed to a schedule that did not allow for discovery prior to the filing of summary judgment motions. (Doc. 41 at ¶ 11; Doc. 32). Because *Bouarfa* did not directly address whether constitutional claims arising out of visa revocation proceedings are reviewable, Plaintiff contends its constitutional retaliation claim is viable and the Court should amend the case management order to allow for limited discovery. (Doc. 57-1).

Section 706 of the APA provides for judicial review of final agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Although Plaintiff does not specifically refer to § 706(2)(B) in its

Fourth Amended Complaint, in summary judgment briefing it relies on §

706(2)(B) as the statutory basis for its constitutional claim. (Doc. 54 at 11-12).

Plaintiff emphasizes that § 706 of the APA "clearly authorize[s] the court to

intervene in cases where agency actions are challenged on constitutional grounds,

permitting remedies such as injunctions or declaratory judgments." (Doc. 54 at 12).

Plaintiff further asserts that "[t]he judicial remedies provided under Section 706 of

the APA explicitly accommodate challenges to unconstitutional actions by federal

agencies, confirming that the court has both the authority and obligation to review

such claims." (Doc. 54 at 12).

Plaintiff casts its constitutional claim differently in its motion to amend the

case management plan to allow for limited discovery. (Doc. 41). As Plaintiff

describes it there, its "claim that Defendants unlawfully retaliated in response to

Plaintiff's exercise of its First Amendment right to petition this Court for redress is

brought directly under the U.S. Constitution." (Doc. 41 at 5). According to

Plaintiff, "[b]ecause this claim arises directly under the Constitution and is not

brought pursuant to the APA, the restriction to decisions based upon the

administrative record applicable in APA claim does not apply" and it should be

allowed to conduct discovery in support of its constitutional retaliation claim.[2]

---

[2]  Presumably because Plaintiff asserts in its motion to amend the case
management plan that its First Amendment claim "arises directly under the
Constitution and is not brought pursuant to the APA," Plaintiff does not argue that

(Doc. 41 at 5).

There is no clear consensus among district courts on "whether the assertion of constitutional claims takes a case outside the procedural strictures of the APA, including the record review rule." *Chiayu Chang v. United States Citizenship & Immigration Services*, 254 F.Supp.3d 160, 161 (D.D.C. 2017). Because § 706 of the APA provides for judicial review of final agency action that is "contrary to constitutional right, power, privilege or immunity," some courts have held that such claims are still subject to the rule that judicial review is limited to the administrative record. *Chiayu Chang*, 254 F.Supp.3d at 161 (citing several cases, including *Jarita Mesa Livestock Grazing Ass'n. v. U.S. Forest Service*, 58 F.Supp.3d 1191, 1237-38 (D.N.M. 2014) (concluding that although a First Amendment retaliation claim arises under the Constitution, it is subject to the procedural provisions of the APA, which generally limit review to the administrative record)). "To hold otherwise and allow fresh discovery, submission of new evidence and legal arguments," the reasoning goes, "would incentivize every unsuccessful part to agency action to allege … constitutional violations in order to trade in the APA's restrictive procedures for the more evenhanded one of the Federal Rules of Civil Procedure." *Chiayu Chang*, 254 F.Supp.3d at 162

---

any of the narrow exceptions to the APA's administrative record rule apply here, and the Court sees no basis for concluding that they do. (Doc. 41 at 5).

(internal quotation marks omitted) (citing *Jarita*, 58 F.Supp.3d at 1238).

Other district courts have taken a more fact-specific approach, concluding that discovery is not appropriate "where a plaintiff's constitutional claims fundamentally overlap with their other APA claims." *Chiayu Chang*, F.Supp.3d at 162 (concluding that discovery on constitutional claims was not appropriate because the plaintiffs' due process and equal protection claims were "fundamentally similar to their APA claims" challenging the agency's decision to deny their visas). "[M]ost district courts within the Ninth Circuit to have addressed the issue" take this approach, and "decline to draw a bright line or categorical rule and instead examine the particular facts of the claims involved and the discovery requested." *Ahmed v. Mayorkas*, 2024 WL 5317160, at *3 (C.D. Ca. May 1, 2024) (denying discovery on constitutional claims under a fact-specific approach and citing several cases including *Rueda Vidal v. U.S. Dep't of Homeland Security*, 536 F.Supp.3d 604, 612 (C.D. Cal. 2021)).

Plaintiff relies on *Rueda* to argue it should be allowed to engage in discovery in support of its retaliation claim. (Doc. 41 at 5-6). *Rueda*, 536 F.Supp.3d at 620. The plaintiff in *Rueda* asserted an APA claim for judicial review of an agency decision denying her application for relief under the Deferred Action for Childhood Arrivals program. The court dismissed the claim on the ground that DACA decisions are discretionary and cannot be reviewed under the APA. *Rueda*,

536 F.Supp.3d at 619-20. The plaintiff also alleged, among other claims, that the government violated her First Amendment rights by denying her DACA application in retaliation for her political speech and activity. *Rueda*, 536 F.Supp.3d at 620. On plaintiff's motion, the court took judicial notice of certain matters of public record, including DACA memos that had originally been placed in the record by the defendants, DACA statistics that were not disputed by the defendants, and news articles indicating "what was in the public realm" at the time. *Rueda*, 536 F.Supp.3d at 613.

The circumstances here are quite different. Plaintiff is not simply asking the court to take judicial notice of undisputed matters of public record, but rather seeking leave to conduct unspecified discovery to support its First Amendment retaliation claim. Additionally, with the exception of referring to the judicially noticed news articles, it is notable that the *Rueda* court did not rely on the extra-record evidence when addressing the plaintiff's constitutional retaliation claim, and instead based its decision on the administrative record. *Rueda*, 536 F.Supp.3d at 621-23.

Under the circumstances, the Court finds that permitting extra-record discovery on Plaintiff's First Amendment retaliation claim is not appropriate. Plaintiff contends that the agency's revocation decision "may constitute retaliatory conduct" given the timing of its lawsuit but has not identified what discovery it

seeks, or sufficiently established that the administrative record submitted by the government is not adequate to address its constitutional claim. *See Ahmed*, 2024 WL 5317160, at *3; *Jiahao Kuang v. U.S. Department of Defense*, 2019 WL 293379, at *2 (N.D. Cal. Jan. 23, 2019) (denying the plaintiffs' request for extra-record discovery on the merits of their constitutional claims because, to the extent the plaintiffs contended the administrative record was insufficient, they had "not shown that the proper remedy is unconstrained discovery into the merits of their constitutional claims, rather than litigating this issue through the normal exceptions concerning extra-record evidence in APA cases"). Accordingly, the Court concludes that Plaintiff's constitutional claim is properly resolved on the administrative record.

To establish a prima facie case of First Amendment retaliation, a plaintiff must show that (1) it engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person or ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020). If the plaintiff makes this showing, "the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *O-Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J,* 467 F.3d 755, 770

(9th Cir. 2006)).

"As for the third element—whether the plaintiff's protected activity was a substantial or motivating factor in the defendant's adverse conduct—a plaintiff must present, 'in addition to evidence that the defendant knew of the protected speech, at least evidence of proximity in time between the protected speech and the allegedly retaliatory decision, evidence that the defendant expressed opposition to the speech, or evidence that the defendant's proffered reason for the adverse action was pretextual'." *Muhammad v. Jenkins*, 2022 WL 363004, at *11 (C.D. Cal. Jan. 14, 2022) (quoting *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). *See also Jackson v. Chappell*, 2017 WL 57304, at *8 (N.C. Cal. Jan. 5, 2017) (proximity in time between the protected conduct and alleged retaliation, combined with evidence that the defendant knew of the protected conduct, may be sufficient to support an inference of retaliatory motive).

To ultimately prevail on a First Amendment retaliation claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "Specifically, a plaintiff must show that the defendant's retaliatory animus was 'a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory

motive'." *Capp*, 940 F.3d at 1053 (quoting *Nieves*, 587 at 399).

Neither party's summary judgment briefing addresses the merits of Plaintiff's retaliation claim. Under Ninth Circuit law at the time summary judgment briefing was complete, visa revocation decisions were subject to judicial review under the APA. *See ANA Intern., Inc. v. Way*, 393 F.3d 886, 893 (9th Cir. 2004), abrogated by *Bouarfa*, 604 U.S. 6. In support of summary judgment, Defendants argued that Plaintiff's constitutional claim should be dismissed on the ground that it was duplicative of Plaintiff's APA claim. (Doc. 47 at 17-18). Because both claims sought the same relief, and the judicial review provisions of the APA provided a sufficient remedy to challenge the agency's revocation decision, Defendants asked the Court to "reject Plaintiff's First Amendment claim and deny the pending motion to amend the case management order." (Doc. 47 at 19). The legal landscape has since changed, however, because as addressed above, *Bouarfa* forecloses any APA claim for judicial review of USCIS's revocation decision. Given this change, Defendants' argument that the judicial review provisions of the APA provide an adequate remedy is inapposite.

For summary judgment purposes, Plaintiff rests entirely on its request for leave to conduct discovery and makes no effort to establish a prima facie case of First Amendment retaliation based on the administrative record. While proximity in time between the protected conduct and adverse agency action, coupled with

evidence that the agency was aware of the protected conduct at the time of its decision, may in some situations be sufficient to raise an inference of retaliatory intent, that is not the case here. "[T]he realization by USCIS that it erred in approving a petition, however arrived at, may be good and sufficient cause for revoking an approval, provided the agency's revised opinion is supported by the record." Matter of Ho, 19 I. & N. Dec. 582, 590 (BIA 1988). Plaintiff filed its First Amended Complaint in July 2023, alleging for the first time that the agency acted arbitrarily and capriciously by denying its petition for Erkin but granting its petition for Bahram. (Doc. 16). As a result of this allegation, USCIS examined the two decisions and determined that the approval of Bahram's petition was erroneous. (Doc. 48 at ¶ 30). This fact alone is not sufficient to establish a prima facie case of retaliatory intent, and Plaintiff does not argue otherwise. Because Plaintiff has not sufficiently established that the filing of its First Amended Complaint was a substantial or motivating factor in the agency's revocation decision, it cannot establish a prima facie case of retaliation and its First Amendment claim fails as a matter of law.

Even assuming Plaintiff could sufficiently establish a retaliatory motive based on (1) the temporal proximity between the filing of the First Amended Complaint in July 2023 and the initiation of revocation proceedings in September 2023; and (2) the government's acknowledgement that it was aware of the

allegedly protected conduct (Doc. 48 at ¶¶ 29-30), its claim fails as a matter of law because the administrative record establishes that USCIS would have made the same decision regardless of any retaliatory motive.

USCIS may revoke a previously approved visa petition "at any time" for what the Secretary of Homeland Security "deems to be good and sufficient cause." 8 U.S.C. § 1155. "Good and sufficient cause" to revoke exists when "the evidence of record at the time the decision was issued warranted a denial of the petition." *Love Korean Church*, 549 F.3d at 754 n.3 (reviewing the agency's revocation decision as if it were an initial denial of the plaintiff's visa petition). "[T]he realization by USCIS that it erred in approving a petition, however arrived at, may be good and sufficient cause for revoking an approval, provided the agency's revised opinion is supported by the record." *Matter of Ho*, 19 I. & N. Dec. 582, 590 (BIA 1988).

Although presented in the context of briefing the APA claim for judicial review that is no longer viable in light of *Bouarfa*, USCIS argues it had good and sufficient cause to revoke approval of the visa petition filed by Plaintiff on behalf of Bahram. (Doc. 47 at 13-17). It is here that Plaintiff's constitutional claim substantially overlaps with the principles of judicial review under the APA, which require the Court to consider whether the agency's decision was arbitrary or capricious.

31

Like the petition for Erkin, the I-140 petition Plaintiff filed on behalf of Bahram identified his prospective job as "Deli Counter Customer Service" and listed intended wages of $23,504 annually. (Doc. 36 at 136). Plaintiff stated on the petition that it had a net annual income of $22,908 and attached Schedule C of its 2020 federal tax return to substantiate that amount. (Doc. 36 at 131, 135, 173). On December 2, 2021, USCIS issued an RFE seeking further documentation of Plaintiff's ability to pay. (Doc. 36 at 127). In response, Plaintiff provided the same additional evidence that it provided in response to the RFE relating to Erkin—its 2020 federal tax return showing a net loss of $162,209 and letters from its accountant and the loan officer. (Doc. 36 at 127). USCIS approved Plaintiff's petition for Bahram on December 29, 2021. (Doc. 36 at 133; Doc. 48 at ¶ 26).

After Plaintiff filed its First Amended Complaint alleging that USCIS acted unreasonably and in violation of the APA by denying its petition for Erkin but granting the petition for Bahram (Doc. 16 at ¶ 13), the agency examined the two decisions and determined it had erroneously approved the petition for Bahram. (Doc. 48 at ¶ 30). On September 20, 2023, the agency sent Plaintiff a NOIR stating that "[a] review of the petition has determined that the approval was in error" and "[t]he evidence did not establish that [Plaintiff] had the ability to pay the beneficiary's proffered wage." (Doc. 36 at 125, 127).

Plaintiff responded to the NOIR on October 19, 2023. (Doc. 48 at ¶ 32,

citing Doc. 36 at 19-124). Along with its written response, Plaintiff provided significantly more evidence than previously submitted with respect to either Erkin's or Bahram's petition, including: (1) 2019 and 2021 individual financial statements; (2) a notarized statement from Plaintiff's owner; (3) Plaintiff's owner's individual 2019 federal tax return; (4) a certificate of fact from the Montana Secretary of State; (5) Plaintiff's corporate 2021 and 2022 federal tax returns; (6) a profit and loss statement covering the period from January 1, 2023, to October 4, 2023; and (7) a statement from Plaintiff's accountant. (Doc. 48 at ¶ 33, citing Doc. 36 at 19-124).

On January 4, 2024, USCIS issued a decision revoking its approval of the I-140 petition for Bahram on the ground that Plaintiff had not demonstrated its ability to pay the proffered wage from the priority date of May 22, 2020[3] "and continuing until the beneficiary obtains permanent residence." (Doc. 36 at 6). Unlike its decision denying the petition for Erkin, the agency determined that Plaintiff did have the ability to pay Bahram in 2020. (Doc. 48 at ¶ 35; Doc. 36 at 6). The agency based this determination on evidence that was not part of administrative record in the Erkin matter:

> The individual financial statements from 2019 and 2021 and the 2020 Individual U.S. Federal Income Tax Returns establish that the petitioner had the ability to pay the beneficiary's wage in 2020. Although the petitioner did not submit an individual financial statement for 2020, as their bank did not

---

[3] (Doc. 48 at ¶ 25).

> require submission of one during that year, the petitioner's owner's assets, liabilities, and estimated living expenses remained consistent from 2019 to 2021, therefore the assets, liabilities, and estimated living expenses can reasonably be expected to be substantially the same in the year 2020. As such, the petitioner's owner's ability to pay can be calculated using the adjusted gross income from the owner's 2020 tax returns ($181,960) minus the estimated living expenses from the petitioner's owner's personal income statement ($20,000).

(Doc. 36 at 6). USCIS explained that because the record reflected that Plaintiff was a single-member limited liability company in 2020 (*see e.g.* Doc 36 at 173), it could consider individual income and assets during that period when evaluating ability to pay during that period. (Doc. 36 at 6). The agency thus considered Plaintiff's owner's individual finances from 2019 to 2021 in determining that Plaintiff had the ability to pay Bahram in 2020. (Doc. 48 at ¶ 38; Doc. 36 at 6).

Because the administrative record reflected that Plaintiff became an S Corporation on January 1, 2021 (*see e.g.* Doc. 36 at 63), however, the agency explained it could not consider the personal assets and income in "determining the petitioning corporation's ability to pay the proffered wage" after that date. (Doc. 48 at ¶ 39; Doc. 36 at 7). Based on Plaintiff's 2021 corporate tax return showing a net loss of $178,078 and net current assets of $9,586, and its 2022 corporate tax return showing a net loss of $20,044 and net current assets of $13,478, the agency found Plaintiff did not have ability to pay Bahram in 2021 because it did not have "net income or net current assets equal to or greater than the proffered wage of $23,504." (Doc. 36 at 7; Doc. 48 at ¶ 40).

Plaintiff makes much of the fact that, unlike USCIS's decision on the petition for Erkin—which found Plaintiff did not have the ability to pay the proffered wage in 2020 but did have the ability to pay in 2021—the agency found that Plaintiff did have the ability to pay Bahrman's proffered wage in 2020 but did not have ability to pay in 2021. But the differences between the agency's ability-to-pay findings in the two cases are reasonably explained by differences in the two administrative records. The evidence USCIS relied on to find that Plaintiff had the ability to pay the Bahram the proffered wage in 2020 had been submitted by Plaintiff in response to the NOIR and was not part of the record in the Erkin matter. And unlike the administrative record in the Erkin matter, which reflected that Plaintiff was at all relevant times a single-member limited liability company (Doc. 37 at 11), the record in Bahram's case indicated that Plaintiff was a single member limited liability company in 2020 and became an S Corporation in January 2021 (Doc. 36 at 6).

USCIS explained that for sole proprietorships and single-member limited companies "the owner's individual assets and liabilities may be considered in calculating the employer's ability to pay the proffered wage." (Doc. 36 at 6, citing *USCIS Policy Manual, Volume 6, Part F, Chapter 2 Appendix: Business Structures and Part E, Chapter 4 Examples of Other Evidence of Ability to Pay*). USCIS further explained that unlike single-member limited liability companies, "[a]

corporation is a separate and distinct legal entity from its owners or shareholders," meaning that "any assets of its shareholders or of other enterprises or corporations cannot be considered in determining the petitioning corporation's ability to pay the proffered wage." Doc. 36 at 7, citing *Matter of Apphrodite Investments, Ltd.*, 17 I. & N. Dec. 530 (BIA 2980)). USCIS thus relied on the 2021 personal financial statement of Plaintiff's owner in the Erkin matter to find that Plaintiff had the ability to pay the proffered wage in 2021, but found it could not consider that evidence in Bahram's case.

In sum, the Court concludes for the reasons outlined above that Plaintiff's constitutional claim is properly resolved on the administrative record, and fails as a matter of law because Plaintiff has not established that (1) the protected activity was a substantial or motivating factor in the agency's revocation decision—which is supported by substantial evidence—and even if it was, (2) the administrative record establishes that USCIS would have made the same decision regardless of any retaliatory motive.

## V.    <u>Conclusion</u>

For the reasons discussed above,

IT IS ORDERED that Plaintiff's motion to amend the case management plan (Doc. 41) and motion for summary judgment (Doc. 39-1) are DENIED and Defendants' cross-motion for summary judgment (Doc. 46) is GRANTED, and

this case is dismissed.

DATED this 5th day of May, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge